654

*In re* M.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. M.W., Respondent-Appellant).

Fifth District No. 5—92—0188

Opinion filed July 19, 1993.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

"For it's one, two, three strikes you're out ***."[1]

Harry Caray's mellifluous reminder to thousands of Cub fans of one of the basic rules of baseball is echoed by the minor's claim that the trial court acted improperly at all three phases of the proceedings below: (1) by denying him counsel at the detention phase, (2) by not advising him properly and by using testimony from the detention phase at the adjudication phase, and (3) by succumbing to the influence of earlier contacts with other members of the minor's family at the dispositional phase. We conclude that the combination of errors requires us to reverse and remand.

---

[1] J. Norworth, Take Me Out to the Ball Game (1908), as quoted in J. Barlett's Familiar Quotations 765 (15th ed. 1980).

On December 26, 1991, the 15-year-old minor, M.W., and his 14-year-old brother were arrested for the burglary of an apartment. On December 27, 1991, they appeared for a detention hearing and were advised:

> "[M.W.] and [younger brother], if you were adults this would be a Class I Felony. What that means is that it's punishable by four to 15 years in the penitentiary and there is no probation that's involved, meaning that you would go to the penitentiary if the charges were proved beyond a reasonable doubt for a minimum of four years. You're not being charged as adults, you're being charged as minors. You have a general understanding of what that's all about because you've been before this Court before. You have the right to remain silent. You are presumed not to have committed this offense until the State proves it beyond a reasonable doubt. You have a right to subpoena witnesses. You have a right to confront your accuser. You have a right to be represented by counsel. I'm going to appoint the Public Defender of Jackson County to represent both of you. You have a right to review any reports that are received by this Court, you are to receive notice of the hearings in this Court and a right to participate in those hearings.
>
> We are here this morning to determine whether your detention is going to continue until such time as we have an adjudicatory hearing with regard to this case.
>
> Are you ready to proceed with the detention hearing, Mr. Grace?
>
> MR. GRACE: Yes, Your Honor.
>
> THE COURT: Call your first witness."

The quoted portion of the transcript forms the basis of defendant's first strike at the trial court's conduct of this case. Quite obviously, the trial court properly appointed counsel to represent the minor on what would be a nonprobationable Class I felony if the minor had been an adult, and equally obviously, the court then called for the State's Attorney to proceed although no counsel for the minor was present.

Section 5—10 of the Juvenile Court Act of 1987 (Act) provides:

> "Detention or shelter care hearing. At the appearance of the minor before the court at the detention or shelter care hearing, all witnesses present shall be examined before the court in relation to any matter connected with the allegations made in the petition. *No hearing may be held unless the minor is repre-*

*sented by counsel."* (Emphasis added.) 705 ILCS 405/5—10 (West 1992).

The minor relies upon *In re Giminez* (1974), 23 Ill. App. 3d 583, 319 N.E.2d 570, which held that a trial court's failure to appoint counsel at the detention hearing required reversal. The State does not contend that the failure to provide counsel in contravention of the statute was proper; instead, it argues that the minor waived his position or that the failure was harmless error. The State's waiver argument is based upon the minor's failure to include an allegation of lack of counsel in his motion to withdraw his admission. 134 Ill. 2d R. 604(d).

The State's harmless-error argument has as one basis the minor's failure to request another detention hearing under the provisions of section 5—10(3) of the Act (705 ILCS 405/5—10(3) (West 1992)) and *In re M.L.K.* (1985), 136 Ill. App. 3d 376, 483 N.E.2d 662. *M.L.K.* found a strong indication of no prejudice because of lack of counsel when the minor's counsel elected not to seek a new detention hearing under section 5—10(3). The State's second basis for its harmless-error argument is the amount of clearly admissible evidence available to establish the minor's culpable conduct. Although it would obviously have been preferable for the trial court to have delayed the detention hearing until counsel for the minor appeared, and it was in fact error to proceed in counsel's absence, we need not resolve the issue of waiver and/or harmless error in view of our resolution of the next claimed error.

The minor's second strike at the trial court, premised upon adjudication-hearing errors, has two bases. The first basis is the court's failure to advise the minor of the effect of an admission at the adjudication hearing. Again, the transcript reveals the following admonitions:

"Other than the dismissal of 90—J—20, has anybody promised you or threatened you in any way to get you to make this admission, [M.W.]?

MINOR M.W.: No.

THE COURT: Has anybody threatened you or promised you anything to make this admission, [younger brother]?

[YOUNGER BROTHER]: No, sir.

THE COURT: Do you admit that you were involved in the residential burglary of your next door neighbor's residence *** on the 26th of December, [M.W.]?

MINOR M.W.: Yes.

THE COURT: [Younger brother]?

[YOUNGER BROTHER]: Yes, sir.

THE COURT: I'm going to find that the admission is knowingly and voluntarily made. I have heard evidence at the detention hearing with regard to this. I find that a factual basis exists for the admissions."

The supreme court has stated that an admission is the juvenile equivalent of a guilty plea by an adult offender (*In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024), but *Beasley* also held that the full range of admonitions required by Supreme Court Rule 402 (134 Ill. 2d R. 402) in criminal proceedings need not be given to juveniles in adjudicatory hearings:

"It is sufficient to satisfy due process requirements that it be apparent from the record that the minors were aware of the consequences of their admissions; that is, that they understood their rights against self-incrimination, their rights to confront their accusers and their rights to a trial; that by the admissions they waived these rights and that the waiver conferred upon the court the authority to treat them in a manner authorized by the Juvenile Court Act." (*Beasley*, 66 Ill. 2d at 392, 362 N.E.2d at 1027.)

In *Beasley*, however, the record at the adjudicatory hearing made it clear that the minors were advised of the rights they were relinquishing. The supreme court quoted two printed pages of admonitions for the three minors before concluding:

"In the three cases now before us, in addition to each minor being represented by counsel, the court addressed each one and ascertained that he knew that he had a right to deny allegations of the petition and require the State to prove the charges against him; to have a trial by the court and to confront the State's witnesses. Each was also informed that as a result of the admission the court could commit the minor to a State institution. In addition to these admonishments common to all three proceedings each judge further interrogated the minor concerning his understanding of his rights. We believe that the record in each of these cases discloses that the minors understood the consequences of their admissions. These warnings and interrogations, together with the fact that each minor was represented by counsel who stated he had informed his client of his constitutional rights which could be waived by an admission, lead us to conclude that the admissions made in these cases were voluntary and intelligent in nature and comported in all respects with the requirements of due process." *Beasley*, 66 Ill. 2d at 397, 362 N.E.2d at 1030.

While *Beasley* clearly reflects the trial court's admonitions, the record in this case clearly reflects their absence. The court merely asked about threats or promises and then concluded that the admission was knowingly and voluntarily made. It is not "apparent from the record that the minors were aware of the consequences of their admissions; that is, that they understood their rights against self-incrimination, their rights to confront their accusers and their rights to a trial." (*Beasley*, 66 Ill. 2d at 392, 362 N.E.2d at 1027.) Even if we were to consider the admonitions furnished at the detention phase and treat them as if they were made at the adjudication hearing, a somewhat controversial procedure, it would still not be apparent from this record that the minor had the basic awareness of his rights that *Beasley* requires to satisfy due process requirements. (See *People v. Stewart* (1984), 101 Ill. 2d 470, 463 N.E.2d 677, *cert. denied* (1984), 469 U.S. 920, 83 L. Ed. 2d 237, 105 S. Ct. 303, *reh'g denied* (1984), 469 U.S. 1077, 83 L. Ed. 2d 517, 105 S. Ct. 579, *habeas corpus granted* (N.D. Ill. 1991), 770 F. Supp. 416, *rev'd* (7th Cir. 1992), 958 F.2d 1379; *People v. Johns* (1992), 229 Ill. App. 3d 740, 593 N.E.2d 594; *In re Starks* (1978), 60 Ill. App. 3d 934, 377 N.E.2d 590.) While the trial court mentioned the right to remain silent and the rights to counsel, confrontation, and cross-examination at the detention hearing, it did not advise him of his right to a trial to determine his status. Thus, even if we were to consider the detention-hearing admonitions as if they were given at the adjudicatory hearing, they would be lacking under *Beasley*. We must, therefore, reverse for a new adjudicatory hearing. *In re D.L.B.* (1986), 140 Ill. App. 3d 52, 488 N.E.2d 313.

Finally, we note that it takes but a few minutes to completely admonish a minor and that those few minutes could obviate any future questions. We realize that such admonitions are not required under *Beasley*, and we consequently do not require them in this case. We agree, however, with Judge Scott:

> "Although the decisions permit relative informality in the taking of admissions, the better practice is for the judge to discuss at length with the minor his rights, and the possible consequences of waiving his rights within the format of Rule 402." Scott, *Delinquency and Due Process: A Review of Illinois Law*, 59 Chi.-Kent L. Rev. 123, 142-43 (1982).

The third strike against the trial judge's conduct involves his concern about the other members of the minor's family:

> "THE COURT: This Court has had a long history with regard to the [W.] family, with regard to this particular case, 91—

J—83. The father can't even bother to attend a single, solitary hearing with regard to these minors. He has appeared in the past, so I know he is able to appear here. Mrs. [W.] has appeared[;] however, we have got a family with three kids that are absolutely, totally and completely out of control here. I'll grant you [the older brother of the minor] has not yet come to the attention of this Court since this Court sent him to the Department of Corrections and he has returned, but his activities prior to that point were exactly the same as these two young men. I would have hoped that the parents would have exerted parental control and even if they hadn't done that, that the two minors would have recognized what happens to someone who engages in the activities which [the older brother] has engaged in in the past and which they continue to engage in.

There's a subtle little difference between [M.W.] and [younger brother] and it's probably due to their age. I hope it's something more than that. First of all, I think any social resources that would be engaged in in this family are totally wasted. We have got a limited amount of resources, the father can't even be bothered to come here. We have got an older son that was sent off, they could care less. I'm not about to waste our very limited resources on a family which is so undesired [sic] to changing their activities or exerting their own parental control that I now wind up having the other two young men before me. I think it's a total waste. I think it's a total failure and I don't expect anything more on the part of the parents in terms of what they are going to do with regard to these two young men."

While the minor had a series of contacts with law-enforcement officials over the preceding two years, and while these prior incidents, when coupled with the burglary involved in this case, might justify the disposition imposed, a juvenile is entitled to be judged on his own conduct and not on that of his family. There is a definite indication, based on the trial court's comments, that the disposition in this case was based, at least in part, upon the court's prior bad experiences with members of the minor's family. While we are aware of trial judges' frustration with unfeeling and/or uncaring parents who make little or no attempt to control their children, we cannot approve punishing a child for the sins of the parents.

The juvenile court system's practice of providing a reduced level of protection for individual rights is based on the concept that children would be treated not as criminals, but as children, and that the

judge would act as a "wise and kind father." (*People ex rel. Houghland v. Leonard* (1953), 415 Ill. 135, 139, 112 N.E.2d 697, 699.) Unfortunately, "Too often the juvenile court judge falls far short of that stalwart, protective, and communicating figure the system envisaged." *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 544, 29 L. Ed. 2d 647, 660, 91 S. Ct. 1976, 1985.

This cause is reversed and remanded for an adjudicatory hearing before a different judge. On remand, counsel may file an affidavit under section 5—10(3) (705 ILCS 405/5—10(3) (West 1992)) for a new detention hearing.

Reversed and remanded with directions.

WELCH and MAAG, JJ., concur.